745 S.E.2d 128

**Loida COLONNA, Appellant,**

**v.**

**MARLBORO PARK HOSPITAL, Employer, and Gallagher Bassett Services, Inc., Carrier, Respondents.**

Appellate Case No. 2011–196407.

Nos. 5117.

Court of Appeals of South Carolina.

Heard Oct. 18, 2012.

Decided April 17, 2013.

Withdrawn, Substituted and Refiled June 26, 2013.

538

Stephen Benjamin Samuels, of Samuels Law Firm, LLC, of Columbia, for Appellant.

Weston Adams, III, and Helen F. Hiser, of McAngus Goudelock & Courie, LLC, of Columbia, for Respondents.

WILLIAMS, J.

In this workers' compensation appeal, Loida Colonna (Colonna) claims the circuit court erred in affirming the Appellate Panel of the Workers' Compensation Commission (the Commission) when it: (1) held Colonna's recovery was limited to scheduled disability under section 42–9–30 of the South Carolina Code (Supp.2012) as opposed to total disability under section 42–9–10 of the South Carolina Code (Supp.2012); (2) held Colonna did not suffer from any additional permanent partial disability; (3) held Colonna had reached maximum medical improvement (MMI); and (4) failed to explicitly hold Marlboro Park Hospital (Marlboro Park) responsible for lifetime maintenance of the spinal cord stimulator implanted in Colonna's back. We affirm.

## FACTS/PROCEDURAL HISTORY

Colonna sustained an admittedly compensable injury to her right ankle and foot on February 21, 2004, when she slipped

on a wet floor and twisted her right ankle and foot while working as a geriatric nurse for Marlboro Park. Marlboro Park accepted her claim and began providing medical treatment and compensation. However, Colonna continued to experience pain and ceased working as a result of her injury. Colonna claimed she required surgery; in response, Marlboro Park sought a determination of whether Colonna had reached MMI and was entitled to additional medical treatment.

The single commissioner held a hearing and subsequently issued an order on August 22, 2005 (2005 Order), finding Colonna sustained "a right lower extremity (ankle) injury," was entitled to additional medical treatment and temporary total disability benefits, and had not reached MMI. In addition, the single commissioner found Colonna "had some aggravation of pre-existing psychological problems because of this injury, but she ... failed to prove her need for psychological treatment [wa]s the sole result of this accidental injury."

Because of her continuing medical issues, Colonna underwent surgery shortly after the initial hearing in May 2005. In March 2006, her attending surgeon, Dr. Mark Easley, of Duke University Medical Center, opined her condition had stabilized, assigned an impairment rating of 40% to her right lower extremity, and released her from his care. Based on Dr. Easley's report, Marlboro Park sought an order terminating temporary compensation, awarding permanent disability, and requesting a credit for overpayment of temporary compensation. In response, Colonna contended she had not reached MMI and requested additional medical treatment for her injuries.

After a hearing, the single commissioner issued an order on May 8, 2007 (2007 Order), and found Colonna reached MMI in March 2006, sustained a 50% permanent partial disability to her right lower extremity, and was entitled to all causally-related medical treatment for her injuries. The single commissioner terminated her temporary compensation and found Marlboro Park was entitled to a credit for overpayment of temporary compensation, which would be deducted from her permanent partial disability award of 97.5 weeks. In addition, the single commissioner held the compensability of any psychological injury was not before him based on the parties'

prior stipulation in the 2005 Order that Colonna had not sustained a compensable psychological injury. The Commission upheld the single commissioner's order in full, and Colonna did not appeal this order.

Thereafter, Colonna complained of continued problems with her right ankle and foot and filed a change of condition claim, seeking additional medical treatment, including a second surgery. Marlboro Park authorized the additional treatment and reinstated her temporary total disability compensation. Colonna underwent a second surgery with Dr. Easley on her right ankle. From an orthopedic standpoint, Dr. Easley concluded Colonna had reached MMI for her right ankle and foot in July 2008 and assessed a 35% impairment rating.

Colonna then sought medical treatment from Dr. Sonia Pasi, a pain management and neurology specialist, at Duke University Medical Center. Dr. Pasi diagnosed her with Reflex Sympathetic Dystrophy (RSD),[1] which caused chronic pain to Colonna's right foot and ankle, resulting from her compensable right foot and ankle injury. In August 2008, Dr. Pasi implanted a trial spinal stimulator to help alleviate her RSD. Following a successful trial period, Dr. Pasi and Dr. Peter Grossi implanted a permanent spinal cord stimulator in Colonna's back in December 2008. Dr. Pasi opined she was at MMI for her right leg and foot in March 2009.

Colonna subsequently underwent a functional capacity evaluation (FCE) in April 2009, which found she was able to work at a light physical demand level for an eight-hour day and was "most likely limited to simple, or unskilled, or at most, detailed, or semi-skilled clerical administrative and similar work activities. . . ." In conducting the FCE, the evaluator noted, "The combination of symptom exaggeration and submaximal effort is thought to represent a voluntary effort to demonstrate a greater level of disability than is actually present."

---

1. Our supreme court defined RSD as follows in *Mizell v. Glover*, 351 S.C. 392, 397 n. 1, 570 S.E.2d 176, 178 n. 1 (2002): "Reflex Sympathetic Dystrophy ('RSD') is a rare condition affecting the sympathetic nervous system, usually in an extremity, resulting in ongoing cycles of extreme pain. It is often triggered by an accident, surgery, or other injury."

Marlboro Park again filed a Form 21 to stop payment of temporary total disability benefits and sought a determination for permanent impairment as well as a credit for overpayment of temporary compensation. In response, Colonna alleged additional injuries to her right knee, left knee, back, neck, and right shoulder and sought a finding of compensability and additional medical treatment. In support of her claim, Colonna testified she could not exercise, suffered from constant stiffness and chronic pain in her right ankle, was unable to drive, and was receiving Social Security disability benefits because of her injury.

The single commissioner held a hearing and issued an order on March 1, 2010. In his order, he held Colonna failed to prove she sustained compensable injuries to her right knee, left knee, back, neck, or right shoulder. He further found Colonna had reached MMI for her right foot and ankle injury, and Marlboro Park was entitled to stop temporary disability benefits. He also concluded she had not suffered any additional permanent partial disability but was entitled to ongoing medical treatment as recommended by her authorized treating physician, Dr. Pasi.

The Commission upheld the single commissioner's decision, adopting the single commissioner's findings of fact and conclusions of law in full. Colonna appealed to this court, and we transferred her case to the circuit court pursuant to Rule 204, SCACR, because this case accrued prior to July 1, 2007. *See Pee Dee Reg'l Transp. v. S.C. Second Injury Fund,* 375 S.C. 60, 62, 650 S.E.2d 464, 465 (2007) (holding that all workers' compensation cases in which the injury occurred on or after July 1, 2007, should be made directly to the Court of Appeals).

After two hearings, the circuit court upheld the Commission's decision in full. In doing so, the circuit court held the following: (1) the surgery to implant the spinal cord stimulator to treat Colonna's RSD did not constitute a separate injury to her back that would bring her within the "two-body part" rule, but her spine was, instead, "merely the site for treatment modality"; (2) the 2007 Order holding that she had not sustained a compensable psychological condition was law of the case and, because Colonna had not raised this issue to the Commission, she was barred from arguing it on appeal;

(3) Colonna was limited to recovery under section 42–9–30 because she only suffered a compensable injury to a single scheduled member; (4) Colonna had not suffered any additional permanent partial disability to her right ankle/foot; (5) Colonna reached MMI for her right ankle/foot injury; and (6) Colonna was entitled to additional medical treatment as recommended by Dr. Pasi, including lifetime maintenance and treatment of her spinal cord stimulator. This appeal followed.

**STANDARD OF REVIEW**

The South Carolina Administrative Procedures Act (APA) governs appeals from decisions of an administrative agency. S.C.Code Ann. § 1–23–380 (Supp.2012); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the APA, an appellate court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but it may reverse when the decision is affected by an error of law. § 1–23–380(5). If the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record[,]" a reviewing court may reverse or modify. *Id.* Substantial evidence is not a mere scintilla of evidence, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached. *Pratt v. Morris Roofing, Inc.*, 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004).

**LAW/ANALYSIS**

**1. Permanent and Total Disability Pursuant to Section 42–9–10.**

Colonna contends her work-related injury affected more than one body part; thus, she is entitled to a permanent, total disability award pursuant to section 42–9–10. Specifically, Colonna claims she satisfied the "two-body part" rule in section 42–9–10 because: (1) the implantation of the spinal cord stimulator affected her back; and (2) her right foot/ankle injury aggravated her preexisting psychological problems. We address each argument in turn.

South Carolina provides three methods to receive disability compensation: (1) total disability under section 42–9–10; (2) partial disability under South Carolina Code section 42–9–20 (Supp.2012); and (3) scheduled disability under section 42–9–

30. *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 105, 580 S.E.2d 100, 102 (2003). The first two methods are based on the economic model in most instances, while the third method conclusively relies upon the medical model with its presumption of lost earning capacity. *Id.*

 As stated in *Singleton v. Young Lumber Company*, 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960), "Where the injury is confined to the scheduled member, and there is no impairment of any other part of the body because of such injury, the employee is limited to the scheduled compensation [pursuant to section 42–9–30].... To obtain compensation in addition to that scheduled for the injured member, claimant must show that some other part of his body is *affected.*" (emphasis added).

As reflected by the foregoing language, *Singleton* stands for the exclusive rule that a claimant with one scheduled injury is limited to recovery under section 42–9–30 alone. The case also stands for the rule that an individual is not limited to scheduled benefits under section 42–9–30 if he or she can show additional injuries beyond a lone scheduled injury. *See Wigfall*, 354 S.C. at 106, 580 S.E.2d at 103. The principle espoused in *Singleton* recognizes "the common-sense fact that, when two or more scheduled injuries [or a scheduled and non-scheduled injury] occur together, the disabling effect may be far greater than the arithmetical total of the schedule allowances added together." *Id.* at 106–07, 580 S.E.2d at 103 (internal citation omitted). Accordingly, the question of whether Colonna is totally and permanently disabled, and thus entitled to recover under section 42–9–10, turns on whether her initial injury had a "disabling effect" on other parts of her body.

## a. Back Injury

 Colonna first argues her claim is within the ambit of section 42–9–10 as a matter of law because the implantation of the spinal cord stimulator affected her back. We disagree.

Colonna relies on the portion of *Singleton*, wherein the supreme court held, "To obtain compensation in addition to that scheduled for the injured member, claimant must show that some other part of his body is *affected.*" *Singleton*, 236

S.C. at 471, 114 S.E.2d at 845 (emphasis added). Because her right foot/ankle injury necessitated the implantation of a spinal cord stimulator, Colonna claims her back was affected, thus triggering the "two-body part" rule.[2]

No South Carolina case directly addresses whether the implantation of a spinal cord stimulator constitutes an indirect injury to the back. However, we find that a more thorough reading of *Singleton* and subsequent cases demonstrates that a claimant must prove not only that another body part was affected by the insertion of the treatment device, but that another body part was impaired or injured for section 42–9–10 to apply. *See id.* at 471, 114 S.E.2d at 845 ("Where the injury is confined to the scheduled member, and there is no *impairment* of any other part of the body because of such injury, the employee is limited to the scheduled compensation ...." (emphasis added)); *see also Wigfall,* 354 S.C. at 106, 580 S.E.2d at 103 (finding the *Singleton* court intended for "impairment" to encompass a physical deficiency and concluding a claimant is not limited to scheduled benefits under section 42–9–30 if he or she can show "additional injuries beyond a lone scheduled injury"); *Bixby v. City of Charleston,* 300 S.C. 390, 397, 388 S.E.2d 258, 262 (Ct.App.1989) (analyzing whether the claimant's injury to a scheduled member "affected" another body part by analyzing whether the claimant "suffer[ed] a residual *disability* as a result" of the compensable injury (emphasis added)).

We find Colonna's argument flawed because she failed to demonstrate that the implantation of the spinal cord stimu-

---

2. In support of her argument that the implantation of a spinal cord stimulator is conclusive proof of an indirect injury to the back, Colonna cites to *Haley v. ABB, Inc.,* 174 N.C.App. 469, 621 S.E.2d 180 (2003). In *Haley,* the North Carolina Court of Appeals stated that "[Haley's] back condition resulted from the implantation of the spinal cord stimulator [to treat RSD] and was a natural and probable result of the compensable injury by accident and resulting pain." *Id.* at 185. However, we find *Haley* distinguishable because in that case, the *unsuccessful implantation* caused Haley to experience severe back pain at the site of the insertion. *Id.* at 182. As a result of the unsuccessful implantation, the court held her back condition was the natural and probable result of the work-related injury. Unlike in *Haley,* Colonna has failed to sufficiently demonstrate that her initial injury or the resulting surgery caused Colonna back pain or impairment. Thus, we find *Haley* is distinguishable from the instant case.

lator injured her back or caused additional back impairment. We concur with the circuit court's conclusion:

> The only relationship between [Colonna's] foot and ankle injury and her spine is that the spine was merely the site for a treatment modality that would serve to improve the functioning in her right leg. The spinal cord stimulator was implanted for the sole purpose of deriving a benefit to nerve deficits in her right leg. The spinal cord stimulator was not implanted to diagnose, remedy or treat any condition in her spine. . . .
>
> . . . .
>
> . . . Implantation of a spinal cord stimulator, without evidence of causally-related symptoms, pain or ill effects in the spine, does not render the body part "affected" under the Act and therefore, there are no additional body parts, including the back, which were affected by [Colonna's] work injury or subsequent treatment for same.

Furthermore, we find substantial evidence in the record to support the circuit court's decision that Colonna did not suffer additional injury or impairment to her back as a result of the spinal cord implantation. Dr. Pasi's medical notes reflect Colonna complained of pain in her right foot, toes, ankle, knee, and leg. In addition, Dr. Pasi noted Colonna complained of pain in her left leg, back, neck, and shoulder, but only diagnosed Colonna with RSD of "the lower limb" and concluded her implantation surgery was successful. Upon examination, Dr. Pasi concluded Colonna's cervical, thoracic, and lumbar regions of her spine were all stable and her range of motion in those areas was also normal. We recognize Colonna's testimony before the single commissioner conflicted with Dr. Pasi's conclusions. Specifically, she stated, "I can't lift twenty pounds without straining and hurting my right foot and right ankle as well as my back. Since I have a spinal cord stimulator in my back[,] I can't lift twenty pounds." Colonna also testified she could only drive short distances after the implantation of the spinal cord stimulator, and her husband typically drove her everywhere. However, when faced with conflicting testimony, we are constrained by our limited standard of review. *See Stokes v. First Nat'l Bank*, 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991) ("Regardless of conflict in the evidence, either of different witnesses or of the same witness, a finding

of fact by the Commission is conclusive."). Therefore, we defer to the Commission on this issue.

### b. Preexisting Psychological Injury

■ Next, Colonna contends she is entitled to benefits pursuant to section 42–9–10 because her injury aggravated her preexisting psychological problems. We disagree.

■ Claims for psychological injury are compensable only if the claimant proves by a preponderance of evidence they are caused by physical injury or by extraordinary and unusual conditions of employment. *Pack v. State Dep't of Transp.*, 381 S.C. 526, 538, 673 S.E.2d 461, 467 (Ct.App.2009).

In the 2005 Order, the single commissioner held, "[Colonna] has had some aggravation of pre-existing psychological problems because of this injury, but she has failed to prove her need for psychological treatment is the sole result of this accidental injury." In the 2007 Order, Colonna stipulated that "[she] did not sustain [a] compensable psychological injury per prior Order of the Commission." As a result, the single commissioner noted compensability of any psychological injury was not before him in light of the 2005 Order that found Colonna did not sustain a compensable psychological injury. Colonna never appealed this ruling; therefore, it is law of the case. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (holding an unappealed ruling is law of the case and should not be reconsidered by the appellate court). Accordingly, we find the compensability of any preexisting psychological problems, and thus whether those problems constitute a second injury under section 42–9–10, are not properly before this court.[3]

---

3. We note Colonna attempts to distinguish what she is now arguing on appeal from the prior rulings of the Commission and circuit court. She contends that while the parties stipulated her psychological injury was not compensable, i.e., she was not entitled to receive medical treatment, the single commissioner's statement in the 2005 Order that "she had some aggravation of pre-existing psychological problems because of this injury" conclusively proves that her injury produced a psychological injury or overlay, which would entitle her to recover under section 42–9–10. However, if Colonna's preexisting mental injury is not compensable as a matter of law, we find it cannot be an "affected" or injured member for purposes of triggering benefits under section 42–9–10.

## c. Requirement to Apply Section 42–9–10

 Last, Colonna contends the circuit court erred in failing to award her benefits under section 42–9–10 because she is entitled to recover under whichever statute provides the greatest benefits. We disagree.

 Generally, an injured employee *may* proceed under either the general disability statutes, i.e., sections 42–9–10 and 42–9–20, or under the scheduled member statute, i.e., section 42–9–30, to maximize recovery under the South Carolina Workers' Compensation Act. *See Brown v. Owen Steel Co.*, 316 S.C. 278, 280, 450 S.E.2d 57, 58 (Ct.App.1994) (proceeding under the general disability sections for an injury to a scheduled member gives the claimant "the opportunity to establish a disability greater than the presumptive disability provided for under the scheduled member section"). However, the scheduled recovery is exclusive only when a scheduled loss is not accompanied by additional complications affecting another part of the body. *See id.* (citing *Singleton*, 236 S.C. at 471, 114 S.E.2d at 845).

Although Colonna *may* proceed under the general disability statutes to maximize her recovery, we find Colonna's argument that the Commission is "required" to make an award for permanent and total disability under section 42–9–10 misplaced. As the aforementioned case law demonstrates, Colonna's ability to recover under section 42–9–10 is premised on her ability to establish an additional injury or impairment to a second body part. *See id.*, 316 S.C. at 280, 450 S.E.2d at 58 (holding commission properly required employee to proceed under the scheduled member section when employee failed to prove back injury affected other body parts or contributed to an impairment beyond a single scheduled member); *cf. Simmons v. City of Charleston*, 349 S.C. 64, 76, 562 S.E.2d 476, 482 (Ct.App.2002) (finding a firefighter was not limited to recovery under the scheduled member statute when he presented substantial evidence that he suffered additional complications to another part of his body, thus entitling firefighter to recover under the general disability statute). Because Colonna failed to sustain her burden of proof on this issue, we find the circuit court properly limited Colonna's recovery to section 42–9–30.

## 2. Permanent Partial Disability

■ In the alternative, Colonna claims she is entitled to additional permanent, partial disability benefits for her left leg and back following her admitted change of condition for the worse. We disagree.

Initially, we note that Colonna captioned her entitlement to additional permanent partial disability benefits as it relates to "her left leg and back." However, the circuit court's order addresses her entitlement to additional permanent partial disability benefits only in reference to her "right lower extremity for the compensable injury suffered to the right ankle/foot." Neither the single commissioner, the Commission, nor the circuit court addressed Colonna's entitlement to additional permanent partial disability benefits as it related to her left leg and back. Because an issue must be properly raised below before we may address it on appeal, we find this issue is not properly preserved for appellate review. *See Pratt*, 353 S.C. at 352, 577 S.E.2d at 481–82 (stating an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the single commissioner or in a request for commission review of the single commissioner's order to be preserved for appellate review).

Even if we assume Colonna intended to reference her right ankle/foot injury, we find substantial evidence exists to support the circuit court's decision to uphold the Commission on this issue. First, Colonna had already received permanent partial disability for the injury she sustained to her right ankle and foot. The medical evidence shows that Colonna's impairment rating for her right ankle and foot decreased from 40% to 35% between her first surgery in 2005 and her second surgery in 2007, which indicates her disability could have decreased as well. Further, despite Dr. Pasi's diagnosis of RSD and acknowledgement of Colonna's complaints of chronic pain, she did not assign Colonna with an impairment rating for her RSD. Rather, once Colonna underwent the surgery to implant the spinal cord stimulator, Dr. Pasi concluded the implantation was "successful," and as of March 18, 2009, she opined Colonna was at MMI for her right leg and foot pain. In view of the foregoing, we hold Colonna failed to establish the requisite facts to entitle her to additional disability bene-

fits. *See Smith v. Michelin Tire Corp.*, 320 S.C. 296, 298, 465 S.E.2d 96, 97 (Ct.App.1995) ("The claimant has the burden to prove such facts as will render the injury compensable.").

### 3. Maximum Medical Improvement

■ Next, Colonna claims the circuit court erred in upholding the Commission's decision that she had attained MMI. We disagree.

■ "[MMI] is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 28, 459 S.E.2d 324, 327 (Ct.App.1995). "MMI is a factual determination left to the discretion of the [Commission]." *Gadson v. Mikasa Corp.*, 368 S.C. 214, 224, 628 S.E.2d 262, 268 (Ct.App.2006).

Colonna conceded before the circuit court that she attained MMI for her right ankle and foot injury but claims on appeal that she has not been medically released for her alleged back injury stemming from the implantation of the spinal cord stimulator. Therefore, without a finding of MMI for her back, she asserts termination of temporary total disability benefits was premature. We disagree.

We find there is substantial evidence in the record to support the circuit court's conclusion that Colonna did not sustain a compensable back injury. Likewise, a finding of MMI for the back is unnecessary before Colonna's temporary total disability benefits could be properly terminated. The only required MMI determination was for Colonna's injury to her right ankle and foot, which we find was proper based on Dr. Easley's and Dr. Pasi's conclusions that Colonna had attained MMI.

Moreover, the only medical evidence documenting Colonna's care after her spinal cord surgery was that of Dr. Pasi. Dr. Pasi saw Colonna three times after her surgery for follow-up visits and concluded the implantation was successful. Dr. Pasi's records do not document any back pain after the surgery; to the contrary, Dr. Pasi notes that Colonna's cervical, thoracic, and lumbar regions of her spine were all stable and her range of motion in those areas was also normal.

Despite Colonna's argument to the contrary, we find the circuit court's mandate to continue medical treatment does not negate our conclusion as the Commission may continue to award additional medical treatment if it tends to lessen Colonna's period of disability despite the fact that she has reached MMI for her right ankle and foot injury. *See Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 583, 514 S.E.2d 593, 598 (Ct.App.1999) (holding "an employer may be liable for a claimant's future medical treatment if it tends to lessen the claimant's period of disability despite the fact the claimant has returned to work and has reached [MMI]"); *see also Cranford v. Hutchinson Constr.*, 399 S.C. 65, 78, 731 S.E.2d 303, 310 (Ct.App.2012) (holding a finding of MMI was proper when treating physician's report coupled with prescription was evidence from which single commissioner could conclude the medication would help alleviate claimant's remaining symptoms, but his medical condition would not further improve); *Scruggs v. Tuscarora Yarns, Inc.*, 294 S.C. 47, 50, 362 S.E.2d 319, 321 (Ct.App.1987) (holding substantial evidence supported a finding of MMI despite the claimant continuing to receive physical therapy). Based on the foregoing, we affirm the circuit court's conclusion that Colonna attained MMI and was no longer entitled to temporary total benefits.

### 4. Lifetime Maintenance of Spinal Cord Stimulator

Last, Colonna contends the circuit court erred in failing to order Marlboro Park to provide lifetime maintenance of the spinal cord stimulator. We decline to address this issue.

The Commission's order provided that Colonna was "entitled to ongoing medical treatment for her right ankle/foot as recommended by her authorized, treating physician, Dr. Pasi." On appeal to the circuit court, the court specifically addressed the issue of lifetime maintenance to the spinal cord stimulator when it concluded, "Pursuant to section 42–15–60, [Colonna] is entitled to ongoing medical treatment for her right ankle/foot as recommended by her authorized, treating physician, Dr. Pasi, *to include lifetime maintenance of the spinal cord stimulator.*" (emphasis added). Marlboro Park concedes this issue in its brief, stating, "There is no dispute over this issue.... This is not a contested issue and this Court need not address it." Accordingly, we decline to address this issue.

*See Leatherwood v. Leatherwood,* 293 S.C. 148, 150, 359 S.E.2d 89, 90 (Ct.App.1987) (finding parties' concessions on issues negated necessity of addressing those issues on appeal).

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**

FEW, C.J., and CURETON, A.J., concur.