LOCKEMY, C.J.:
**196 James Dent appeals the South Carolina Workers' Compensation Commission Appellate Panel's (Appellate Panel) order, arguing the Appellate Panel erred in (1) failing to find he is totally and permanently disabled, and (2) finding his disability is primarily the result of his lung cancer and not his work-related back injury. We reverse.
FACTS/PROCEDURAL BACKGROUND
James Dent was employed by the East Richland County Public Service District (the District) as a sewer line maintenance foreman.[1] On May 1, 2012, Dent sustained an admitted **197 injury to his lower back in the course of his employment while attempting to move a manhole cover.
Dent was initially treated by Dr. Paula Belmar. Dent complained to Dr. Belmar of low back pain which radiated down his right leg. Dr. Belmar noted Dent's back pain and lumbar radiculopathy[2] in her assessment and prescribed Dent pain medication and made referrals for physical therapy and an MRI. On June 25, 2012, Dent underwent a lumbar spine MRI which revealed a neoplasm in the lung. Dent was subsequently diagnosed with lung cancer.[3]
In July 2012, Dent began treatment with Dr. Brett Gunter. Dr. Gunter ordered a second MRI to evaluate Dent's lower back pain. The MRI revealed moderate spinal stenosis at L3-4 and L4-5. Dr. Gunter diagnosed Dent with lumbar spondylosis with moderate stenosis and lumbar radiculopathy. He ordered physical therapy and lumbar epidural steroid injections.[4] Dr. Gunter also referred Dent to a work hardening program. Following an evaluation, it was determined Dent was not a candidate for the program due to shortness of breath and back pain. The physical therapist who performed the evaluation and observed Dent's physical abilities over a period of several months, found Dent would be limited to performing sedentary to limited light physical demand labor.
On May 8, 2013, Dr. Gunter opined Dent had reached maximum medical improvement (MMI) with a 10% permanent impairment to the whole person and released Dent to work at a medium duty level. Dr. Gunter further opined Dent may require non-steroidal anti-inflammatory drugs for future medical treatment.
On July 8, 2013, Dent received an independent medical exam (IME) from Dr. Leonard Forrest. Dr. Forrest noted **198 Dent suffered pain in his back and right leg and opined Dent had lost more than 50% of the use of his back and suffered a 21% impairment to the whole person as a result of his work accident. Dr. Forrest further opined Dent could not return to work-even sedentary work-as a result of his injury. According to Dr. Forrest, Dent's inability to work was not a result of his lung cancer.
In November 2013, Dent received a vocational evaluation from Harriet Fowler. Fowler opined,
given [Dent's] advancing age ..., education and functional academic levels including illiteracy, work history and attendant skills (all heavy and very heavy categories and lower skilled), and significant and severe physical limitations it is clearly more likely than not that [Dent] is *889 and will be ... unable to obtain or maintain substantial gainful employment.
On September 20, 2013, Dent filed a Form 50 alleging he was permanently and totally disabled as a result of his work accident. Dent alleged he suffered compensable injuries to his back, right leg, and left leg. The District and the State Accident Fund (collectively, Respondents) subsequently filed a Form 51, admitting an injury to Dent's back and denying any injury to Dent's legs.
A hearing was held before the Single Commissioner on February 7, 2014. At the hearing, Dent alleged he was entitled to permanent total disability (PTD) due to either (1) loss of earning capacity under section 42-9-10 of the South Carolina Code (2015) or (2) a 50% or more loss of use of the back under subsection 42-9-30(21) of the South Carolina Code (2015). Dent testified his lower back pain rates as an eight out of ten and radiates down his right-and sometimes, left-leg. Dent also testified he has numbness and weakness in his right leg and difficulty sitting and standing for long periods of time. According to Dent, the physical therapy and steroid injections he was prescribed did not provide him with any lasting pain relief. Dent further testified he has been employed as a heavy laborer his entire working career and does not believe he could return to the type of work he previously performed.
Respondents argued Dent only sustained an injury to his back as a result of his work accident and was not totally and **199 permanently disabled. Respondents asserted Dr. Gunter's 10% impairment rating should be accorded the greatest weight and argued Dent could perform work within the restrictions placed by his medical providers. Respondents further asserted Dent's lung cancer was a disabling factor which eclipsed his back injury.
In an April 14, 2014 order, the Single Commissioner held (1) Dent sustained a work-related injury to his back; (2) Dent's right leg was affected by his back injury; (3) this was a " 'one body part' (i.e. Singleton ) case"[5] ; (4) Dent's disability stemmed primarily from his lung cancer ; (5) Dent had reached MMI and was entitled to an award of 35% permanent partial disability (PPD) pursuant to subsection 42-9-30(21); and (6) Dent was entitled to further medical treatment for his back. The Single Commissioner found Dr. Forrest's 21% impairment rating was not persuasive given Dent "was treated conservatively, and did not undergo surgery."
Dent subsequently appealed the Single Commissioner's findings to the Appellate Panel. Following a hearing, the Appellate Panel remanded the case to the Single Commissioner for clarification regarding its finding that Dent's right leg was affected by his back injury but that this was a "one body part" case requiring application of the rule in Singleton . On remand, the Single Commissioner issued an order on February 24, 2015, withdrawing her finding that this was a "one body part" case but still denying Dent was totally and permanently disabled as a result of his back injury. The Appellate Panel affirmed the Single Commissioner's February 2015 order in full on July 10, 2015. This appeal followed.
**200 STANDARD OF REVIEW
"The South Carolina Administrative Procedures Act establishes the substantial evidence standard for judicial review of decisions by the [Appellate Panel]." Murphy v. Owens Corning , 393 S.C. 77, 81, 710 S.E.2d 454, 456 (Ct. App. 2011) (citing S.C. Code Ann. § 1-23-380 (Supp. 2011) ). "Under the substantial evidence standard of review, this court may not substitute its judgment for that of the [Appellate Panel] as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law."
*890 Id. at 81-82, 710 S.E.2d at 456. "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." Taylor v. S.C. Dep't of Motor Vehicles , 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct. App. 2006) (quoting S.C. Dep't of Motor Vehicles v. Nelson , 364 S.C. 514, 519, 613 S.E.2d 544, 547 (2005) ). "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." Olson v. S.C. Dep't of Health & Envtl. Control , 379 S.C. 57, 63, 663 S.E.2d 497, 501 (Ct. App. 2008).
LAW/ANALYSIS
Dent argues the Appellate Panel erred in failing to find he was permanently and totally disabled pursuant to either section 42-9-10 or subsection 42-9-30(21) of the South Carolina Code (2015).
"South Carolina provides three methods to obtain disability compensation: 1) total disability under S.C. Code Ann. § 42-9-10 ; 2) partial disability under S.C. Code Ann. § 42-9-20 ; and 3) scheduled disability under S.C. Code Ann. § 42-9-30." Wigfall v. Tideland Utilities, Inc. , 354 S.C. 100, 105, 580 S.E.2d 100, 102 (2003). "The first two methods are premised on the economic model, in most instances, while the third method conclusively relies upon the medical model with its presumption of lost earning capacity." Id.
**201 I. Section 42-9-10
First, Dent contends the Appellate Panel erred in failing to find PTD under section 42-9-10 of the South Carolina Code (2015). We agree.
Section 42-9-10 provides for PTD "[w]hen the incapacity for work resulting from an injury is total." S.C. Code Ann. § 42-9-10(A) (2015). In Wynn v. Peoples Natural Gas Company of South Carolina , 238 S.C. 1, 11-12, 118 S.E.2d 812, 817-18 (1961), our supreme court stated:
Disability in compensation cases is to be measured by loss of earning capacity. Total disability does not require complete helplessness. Inability to perform common labor is total disability for one who is not qualified by training or experience for any other employment. On the other hand the rule in most states is that an employee who is capable of performing other work that is continuously available to him will not be deemed totally disabled because he is unable to resume the duties of the particular occupation in which he was engaged at the time of his injury. The generally accepted test of total disability is inability to perform services other than those that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist.
(internal citations omitted). The burden is on the employee to prove he or she is totally disabled under section 42-9-10. Coleman v. Quality Concrete Prods. , Inc. , 245 S.C. 625, 630, 142 S.E.2d 43, 45 (1965).
"The policy behind allowing a claimant to proceed under the general disability § 42-9-10 and § 42-9-20 allows for a claimant whose injury, while falling under the scheduled member section, nevertheless affects other parts of the body and warrants providing the claimant with the opportunity to establish a disability greater than the presumptive disability provided for under the scheduled member section." Brown v. Owen Steel Co. , 316 S.C. 278, 280, 450 S.E.2d 57, 58 (Ct. App. 1994). "When, however, a scheduled loss is not accompanied by additional complications affecting another part of the body, the scheduled recovery is exclusive." Id. As stated in Singleton , "Where the injury is confined to the scheduled member, and there is no impairment of any other part of the body because **202 of such injury, the employee is limited to the scheduled compensation [pursuant to section 42-9-30 ]. ... To obtain compensation in addition to that scheduled for the injured member, claimant must show that some other part of his body is affected. " 236 S.C. at 471, 114 S.E.2d at 845 (emphasis added).
In Colonna v. Marlboro Park Hospital , 404 S.C. 537, 546, 745 S.E.2d 128, 133 (Ct. App. 2013), this court, after reviewing Singleton and other case law, held a claimant must prove not only that another body part was affected by an injury to a scheduled member, *891 but that another body part was impaired or injured for section 42-9-10 to apply. In Colonna , the claimant sought workers' compensation benefits for a compensable injury to her ankle and right foot. 404 S.C. at 541, 745 S.E.2d at 130. To address the pain in the claimant's ankle and foot, a spinal cord stimulator was implanted in her back. Id. at 542, 745 S.E.2d at 131. The claimant asserted the stimulator affected her back, and thus she should be entitled to proceed under section 42-9-10. Id. at 545, 745 S.E.2d at 133. The court found the substantial evidence in the record did not support a finding that the claimant suffered an additional injury or impairment to the back. Id. at 547, 745 S.E.2d at 134. The court noted none of the medical evidence indicated the claimant ever complained of back pain to her doctors. Id. While the court recognized that the claimant testified lifting heavy objects caused her back pain and the implantation of the stimulator hindered her ability to drive, it found it was constrained by its limited standard of review when faced with conflicting testimony. Id. Thus, the court deferred to the Commission's finding that the implantation of the stimulator did not constitute a separate injury to her back. Id. at 548, 745 S.E.2d at 134.
Here, unlike in Colonna , Dent presented sufficient evidence to support his claims that his back injury has caused additional injury or impairment to his leg. Dent complained of persistent pain, numbness, and weakness in his right leg to his doctors, and Drs. Belmar and Gunter both diagnosed Dent with lumbar radiculopathy. The Appellate Panel also found Dent's right leg was affected by his back injury. We find the evidence of Dent's leg pain in the record is substantial evidence **203 of an injury affecting Dent's right leg. Thus, Dent was entitled to proceed under section 42-9-10.
In addition, the record contains substantial evidence that Dent is permanently and totally disabled under section 42-9-10 due to an incapacity for work. In finding Dent was not permanently and totally disabled, the Appellate Panel relied primarily on Dr. Gunter's imposition of medium duty work restrictions. However, we find substantial evidence does not support a finding that Dent is qualified for medium duty or even sedentary work. Dent's entire work history consists of heavy labor including sewer line maintenance, furniture delivery, and glass and vending machine installation. All of the experts in the record agree Dent cannot return to his previous employment or any heavy labor job. Dr. Forrest also opined Dent would not be able to perform sedentary work. Dr. Forrest concluded that although Dent has a high school education, he did not foresee Dent being able to learn new skills to work a sedentary position. In addition, Dent's physical therapist, who actually observed and tested his physical capacities, found Dent was only capable of sedentary work.
The opinions of Dr. Forrest and the physical therapist are supported by the results of Dent's vocational evaluation. In the evaluation, Fowler opined Dent is and will be unable to obtain or maintain substantial gainful employment due to factors such as advancing age, educational and functional academic levels including illiteracy, work history, and severe physical limitations. Fowler further noted that although Dent has some memory loss related to the effects of chemotherapy and radiation, he would still likely be unable to obtain gainful employment without any memory loss. Fowler found Dent scored at a 3rd grade level in arithmetic, a 4th grade level in spelling, and a 5th grade level in reading. This finding supports Dent's testimony that he would not be able to do a job that requires him to use a computer, complete paperwork, or do arithmetic. In making her determination regarding Dent's capacity for work, Fowler considered the opinions of Dr. Belmar, Dr. Gunter, Dr. Forrest, and the physical therapist. She gave greater credence to the findings of Dr. Forrest and the physical therapist, noting they had more specific training in rehabilitation and determining physical abilities than Dr. **204 Gunter, a neurologist. Fowler further noted Dr. Forrest's evaluation reflected Dent's "most current condition."
A finding that a claimant can perform sedentary or medium duty work does not constitute evidence that such work is available to the claimant. Although Dr. Gunter opined Dent could work at a medium duty level, we note a transferable skills capacity *892 analysis, which analyzed over 12,000 job titles in the United States economy and their respective requirements, revealed there were no jobs titles that would be within Dent's current transferable abilities. As our supreme court found in Wynn, "[i]nability to perform common labor is total disability for one who is not qualified by training or experience for any other employment." Accordingly, based on the record as a whole, we hold substantial evidence supports a finding that Dent is unable to work and is entitled to a permanent, total disability award pursuant to section 42-9-10. See Coleman , 245 S.C. at 630, 142 S.E.2d at 45 (holding the burden is on the employee to prove he or she is totally disabled, specifically that he or she is unable to perform services other than those that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist). Accordingly, we reverse the Appellate Panel's determination that Dent was not permanently and totally disabled.
II. Subsection 42-9-30(21)
Dent also contends the Appellate Panel erred in failing to find PTD under subsection 42-9-30(21) of the South Carolina Code (2015). Given that resolution of the prior issue is dispositive of this appeal, the court need not address this issue. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).
III. Lung Cancer
Finally, Dent argues the Appellate Panel erred in finding his disability was primarily the result of his lung cancer. Specifically, Dent contends the Appellate Panel's finding **205 is based on speculation and not supported by substantial evidence in the record. We agree.
The Appellate Panel found, "Although the undersigned greatly sympathizes with [Dent], we find that [Dent's] disability stems primarily from his cancer condition, including but not limited to the effects of the chemotherapy and radiation [Dent] has undergone." In support of this finding, the Appellate Panel cited Dent's (1) statement to physical therapy personnel that he planned to retire due his lung cancer ; (2) use of a cane; and (3) memory loss.
The only expert medical testimony in the record regarding whether Dent is disabled due to his back injury or his lung cancer is Dr. Forrest's testimony that "the lung cancer is not playing any role in my opinion currently, which is that Mr. Dent is unable to return to work at any level." The Appellate Panel found Dr. Forrest's opinion was unpersuasive primarily due to information contained in Dent's work hardening evaluation. In the evaluation, Dent's physical therapist stated Dent planned to retire "[d]ue to lung cancer and back injury." The Appellate Panel placed great weight on the physical therapist's listing of lung cancer as the first reason for Dent's decision to retire. However, the record is not clear whether Dent listed lung cancer first to the therapist or whether that is simply the order she chose to record the information. Additionally, we note the physical therapist reversed the order in a letter to Dent's attorney stating, "[g]iven [Dent's] medical conditions of known low back injury ... and lung cancer..." the testing involved in a functional capacity evaluation would be limited.
The Appellate Panel also relied on Dent's use of cane to support its finding that his disability was a result of his lung cancer. The Appellate Panel concluded Dent's use of a cane was "attributable to his weakened condition from cancer, radiation and chemotherapy." There is no medical evidence in the record to support this determination; therefore, we find it is speculative for the Appellate Panel to find Dent's use of a cane is related to his cancer diagnosis or treatment.
Further, while we recognize Dent testified he has memory loss due to the chemotherapy he received for his lung cancer, we note Fowler opined in Dent's vocational evaluation that **206 Dent would be unable to obtain and maintain employment even without memory issues. Fowler further opined Dent's lung cancer did not play a role in her determination that Dent is unable to return to work.
Finally, we note the record does not include any evidence from Dent's oncologist or any other medical expert supporting the Appellate Panel's determination regarding *893 Dent's lung cancer. Accordingly, we hold the Appellate Panel's finding that Dent's disability is primarily the result of his lung cancer is not supported by substantial evidence; thus, we reverse the Appellate Panel as to this issue.
CONCLUSION
The Appellate Panel's finding that Dent is not totally and permanently disabled due to his work injury is
REVERSED.
HUFF, J., concurs.

Dent is fifty-eight years old. He was employed by the District for twenty-seven years.

Lumbar radiculopathy is the "compression and irritation of nerve roots in the lumbar region, with resultant pain in the lower back and lower limbs." Lumbar Radiculopathy , Mosby's Dictionary of Medicine, Nursing & Health Professionals (10th ed. 2017).

Dent's cancer was treated with chemotherapy and radiation. His last chemotherapy treatment was in December 2013. As of the time of oral argument in this case, Dent's cancer was in remission.

Dent stated to Dr. Gunter he would not consider a surgical alternative should one be offered.

In Singleton v. Young Lumber Company , 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960), Singleton suffered an injury to a scheduled member, his leg, and no other condition was claimed to have contributed to his disability. Singleton argued the injury to his leg was so disabling that he should be found totally disabled. Id. at 468, 114 S.E.2d at 844. The court held that because the injury was confined to a scheduled member, compensation must be determined under the scheduled injury statute as provided by the legislature. Id. at 473, 114 S.E.2d at 846. Thus, an impairment involving only a scheduled member is compensated under the scheduled injury statute and not the general disability statute. Id. The court held, "To obtain compensation in addition to that scheduled for the injured member, [Singleton] must show that some other part of his body is affected." Id. at 471, 114 S.E.2d at 845.