701 S.E.2d 762

Michael D. CRISP, Jr., Employee, Respondent,

v.

SOUTHCO. INC., Employer, and Pennsylvania National Mutual Casualty Insurance Co., Carrier, Appellants.

No. 4746.

Court of Appeals of South Carolina.

Heard June 23, 2010.

Decided Sept. 29, 2010.

Rehearing Denied Nov. 22, 2010.

Vernon F. Dunbar, of Greenville, for Appellants.

Kathryn Williams, of Greenville, for Respondent.

WILLIAMS, J.

In this workers' compensation case, SouthCo. Inc. (South-Co.) argues the circuit court erred in its capacity as an appellate court by reversing the Workers' Compensation Commission's (Commission) finding that Michael Crisp (Crisp) did not sustain a physical brain injury. We agree and reverse.

## FACTS

Crisp was an employee of SouthCo., a grassing and seeding company. On March 10, 2004, Crisp was assisting his coworkers in installing an erosion control fence. The installation of the fence required a Bobcat earthmover bucket to press poles into the ground. While Crisp was erecting a pole, the Bobcat bucket detached and struck Crisp's head, neck, back, and right upper extremity. Crisp was admitted to Mary Black Memorial Hospital (the hospital) and was treated for abrasions and bruises behind the back of his head and neck as well as injuries to his back and right hand. Additionally, Crisp sustained fractures to his third and fourth metacarpal bones in his right hand. On March 17, 2004, Dr. James Essman performed surgery on the fractures. Following surgery,

Crisp sought medical treatment from several physicians regarding his headaches and neck and lower back pain.

Dr. J. Hunter Leigh, a physician with Mountain View Family Practice, evaluated Crisp on March 26 and April 8, 2004 and diagnosed Crisp with cervical muscle strain and fractures to his right hand. Dr. John Klekamp, a physician with Piedmont Orthopaedic Associates, evaluated Crisp on April 16, June 2, and July 7, 2004, and diagnosed Crisp with cervical and lumbar strain and fractures to his right hand.

Dr. Kevin Kopera, a physician with the Center for Health and Occupational Evaluation, evaluated Crisp on August 12, September 2, September 23, and October 8, 2004. Dr. Kopera concluded Crisp appeared to be neurologically intact but ordered a MRI scan of Crisp's brain. The MRI scan did not reveal any abnormalities.

Dr. Robert Moss, a psychologist, conducted a neuropsychological evaluation of Crisp on April 12-13, 2005. Dr. Moss noted,

> On the basis of the current examination, there are clear indications of deficits in verbal memory, attention, problem solving, and inhibition tied to his work injury. There are indications that he has likely experienced personality changes as a result of his injury.... Mr. Crisp is experiencing psychological distress from his injury as well. The exacerbation of obsessive-compulsive tendencies can also be associated with brain injuries involving the orbito-frontal area. This area is often affected in head injury cases due to the irregular shape of the skull and olfaction is often affected since the olfactory bulbs are there. The current findings would be consistent with a frontal lobe injury.

Dr. Moss diagnosed Crisp with the following conditions: cognitive disorder not otherwise specified, probable personality change due to head injury, exacerbation of obsessive-compulsive tendencies, traumatic brain injury consistent with a frontal lobe injury, and poly-substance abuse in full sustained remission. Additionally, Dr. Moss concluded Crisp could benefit from a brain injury program.

On May 24, 2005, Dr. Thomas Collings, a neurologist, diagnosed Crisp with a closed head injury. According to Dr. Collings, a closed head injury consists of "trauma to the brain

in a global way as opposed to being a focal area of the brain and ... causes symptoms in ... higher competent motions." Dr. Collings asserted Crisp's head injury appeared to be "very minor," and Crisp did not sustain a significant head injury based on his medical records and the low frequency of headache complaints.

Dr. Collings also stated that he significantly relied on Dr. Moss' neuropsychological report, even though there were some inconsistent findings compared to Crisp's medical records and his personal observations. However, Dr. Collings concluded Dr. Moss' report should be followed to ascertain what happened to Crisp and to monitor his underlying psychiatric and substance abuse problems.

Dr. David Price, a psychologist and adjunct associate professor with the Medical University of South Carolina Department of Psychiatry and Behavioral Sciences and the University of South Carolina Upstate Department of Social and Behavioral Sciences, concluded there was no credible evidence that Crisp sustained a brain injury. Dr. Price noted there was "no objective medical evidence of a brain injury such as an abnormal CT scan, MRI, or EEG" and asserted Crisp suffered from Substance–Induced Persisting Dementia. Dr. Price diagnosed Crisp with the following conditions: obsessive-compulsive disorder, antisocial personality disorder, partner relational problem, adjustment disorder with depressed mood, and phase of life problem. The Commission concluded Dr. Moss' expert report and opinions were more credible than Dr. Price's report.

The Workers' Compensation Commissioner (Commissioner) concluded Crisp sustained a head injury resulting in cognitive disorders to his brain but not a physical brain injury. The Commission affirmed the Commissioner's order in its entirety. The circuit court reversed the Commission's ruling and concluded Crisp sustained a physical brain injury.[1] This appeal followed.

---

1. Pursuant to a statutory modification of section 42–17–60 of the South Carolina Code (2010), injuries occurring on or after July 1, 2007, are appealed directly from the Commission to the Court of Appeals.

## STANDARD OF REVIEW

■■■ The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). The Commission is the ultimate fact finder in workers' compensation cases and is not bound by the single commissioner's findings of fact. *Etheredge v. Monsanto Co.*, 349 S.C. 451, 454, 562 S.E.2d 679, 681 (Ct.App.2002). The findings of the Commission are presumed correct and will be set aside only if unsupported by substantial evidence. *Lark*, 276 S.C. at 135, 276 S.E.2d at 306. Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Taylor v. S.C. Dep't of Motor Vehicles*, 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct.App.2006).

## LAW/ANALYSIS

■■■ SouthCo. argues the circuit court erred in reversing the Commission's decision because substantial evidence existed to support the Commission's finding that Crisp did not sustain a physical brain injury. We agree.

In reversing the Commission, the circuit court's order stated,

> From the foregoing, it is apparent the Commission made findings consistent with all of the symptoms and conditions on which Dr. Moss made his diagnosis of traumatic brain injury and physical brain damage, including chronic headaches, mild verbal memory problems, attention and concentration problems, problem solving and inhibition problems, probable personality change due to head injury, exacerbation of obsessive-compulsive tendencies, decrease in the sense of smell, frontal lobe brain injury, traumatic closed head injury, and Cognitive Disorder [not otherwise specified].... Nevertheless, despite finding Dr. Moss credible, adopting the findings of brain injury related symptoms and conditions that he used to diagnose frontal lobe brain injury and physical brain damage, and awarding treatment in a

"brain injury program" he recommended, the Commission determined that [Crisp] had not sustained physical brain injury. That conclusion contradicts the Commission's findings of brain injury related conditions, such as Cognitive Disorder [not otherwise specified], and is clearly erroneous. The Commission rejected the other expert's report, so there is no credible evidence on the record on which the Commission can base its finding that claimant did not sustain physical brain damage.

Therefore, because the only evidence on the record is that [Crisp] has sustained frontal lobe brain injury and physical brain damage, it is the determination of this Court that the Commission's finding to the contrary is erroneous, is not supported by substantial evidence, and is reversed. Furthermore, since the only conclusion that can be reached on this evidence is that [Crisp] has sustained frontal lobe brain injury and physical brain damage, this Court finds as a matter of law that [Crisp] has sustained physical brain damage within the meaning of the Act.

To the contrary, we conclude the record is replete with substantial evidence to support the Commission's finding that Crisp did not sustain a physical brain injury based on Dr. Collings' testimony and the medical records of Crisp's physicians.

The medical records of the several physicians who treated Crisp following the accident support reversal of the circuit court's decision. The hospital's physicians did not note any symptoms commonly attendant to a physical brain injury during Crisp's treatment. The physicians who evaluated Crisp following surgery did not diagnose Crisp with a physical brain injury. In fact, Dr. Kopera's MRI scan did not reveal any abnormalities suggestive of a physical brain injury and specifically opined Crisp was neurologically intact.

Furthermore Dr. Collings testified,

What's missing to me and what was missing when I examined him myself and tried to elicit this history is he doesn't seem to recall being hit in the head. He wasn't complaining of head trauma or pain at the time. He was not aware that he had a cut on the head. It was only when someone else was pointing out to him and he was not immediately but

very briefly able to get up and run after the accident and was concerned about his hands. All of those things stand in contrast to someone who should've had a significant head injury. Usually when people have a significant head injury, closed head injury, they're knocked out. They're unconscious for a period of time and then they're confused when they wake up from that and they're often unable to get up and would be ataxic or have [no] control of their balance and so forth. All of these things are lacking in that report. Did he have a head injury? Yes, he had some type of head injury but it appears from the records to be very minor.

Moreover, Dr. Collings testified that Crisp's headaches were not a "big part of the problem" during his evaluation and his headaches were "out of character" and "out of severity" for a significant head injury stemming from the accident. Specifically, Dr. Collings stated,

[T]he fact that [the headaches are] missing in the record and only occasionally he has chronic pain in his neck here but only occasional headaches implies that he wasn't complaining a lot about headaches or seeking medication or seeking treatment. I find that all unusual if he has a significant head injury.

Dr. Collings further concluded he had "great difficulty in finding any evidence to support [a physical brain injury entitling Crisp to lifetime indemnity benefits]," in the absence of Dr. Moss' report and a vocational evaluation which stated that Crisp was not employable.

Even though the record presents conflicting evidence on the issue of whether Crisp suffered a physical brain injury, we conclude the circuit court erred in reversing the Commission. *See Pack v. State Dep't. of Transp.*, 381 S.C. 526, 536, 673 S.E.2d 461, 466 (Ct.App.2009) (stating where there are conflicts in the evidence over a factual issue, the findings of the Commission are conclusive); *Taylor*, 368 S.C. at 36, 627 S.E.2d at 752 (stating evidence is substantial if, considering the record as a whole, it "would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action"); *Rogers v. Kunja Knitting Mills, Inc.*, 312 S.C. 377, 381, 440 S.E.2d 401, 403 (Ct.App.1994) (holding the circuit court's reversal of the Commission was

error because although the evidence conflicted, the Commission's findings were supported by substantial evidence).

## CONCLUSION

Accordingly, the circuit court's decision is **REVERSED.**

HUFF and SHORT, JJ., concur.