752 S.E.2d 279

Bobby BAKER, Employee/Claimant, Appellant,

v.

HILTON HOTELS CORPORATION, Employer, and ACE American Insurance Company, Carrier/Defendants, Respondents.

Appellate Case No. 2011–204487.

No. 5184.

Court of Appeals of South Carolina.

Heard Sept. 11, 2013.

Decided Nov. 27, 2013.

396

Luke A. Rankin, of Rankin & Rankin, PA, of Conway, for Appellant.

William Thomas Bacon, IV, of Collins & Lacy, PC, of Charleston, and Amy Lynn Neuschafer, of Collins & Lacy, PC, of Murrells Inlet, for Respondents.

LOCKEMY, J.

Bobby Baker appeals the South Carolina Workers' Compensation Commission Appellate Panel's (Appellate Panel) order, arguing the Appellate Panel erred in (1) finding he did not suffer physical brain damage, and (2) relying on *Crisp v. SouthCo. Inc.*, 390 S.C. 340, 701 S.E.2d 762 (Ct.App.2010), *rev'd*, 401 S.C. 627, 738 S.E.2d 835 (2013) *(Crisp I)*. We affirm in part and remand.

## FACTS/PROCEDURAL BACKGROUND

On May 6, 2008, Baker, a maintenance worker employed by Hilton Hotels Corp. (Hilton) in Horry County, sustained an injury during the course and scope of his employment when a piece of ceiling tile fell and struck him on the head. Baker lost consciousness and fell to the ground. He was initially treated at the emergency room, where he was diagnosed with a scalp laceration and a head contusion. Subsequently, on June 16, 2008, Baker visited Doctor's Care complaining of lower back and neck pain. Baker was diagnosed with "low back strain." A June 23, 2008 spinal MRI revealed Baker had degenerative disc disease and facet joint disease.

On June 26, 2008, Baker was referred to neurologist Dr. Michael McCaffrey. Dr. McCaffrey's notes reflect Baker's primary complaint was low back pain. Additionally, Dr.

McCaffrey noted Baker had ringing in his ears. Dr. McCaffrey found Baker was "[o]riented to person, place, and time" with "[n]o difficulty with short or long term memory" and "[g]ood attention span and concentration." Dr. McCaffrey diagnosed Baker with "low back pain with right leg radiation" and a "closed-head injury with a left occipital laceration." Dr. McCaffrey noted Baker's laceration had completely healed and he had no residual symptoms from it.

Baker continued treatment with Dr. McCaffrey through March 11, 2009. Dr. McCaffrey's notes reflect Baker continued to complain of headaches during his treatment; however, Dr. McCaffrey's assessment of Baker's mental status did not change. Dr. McCaffrey determined Baker had reached maximum medical improvement (MMI) in March 2009. Dr. McCaffrey found Baker was totally and permanently disabled "in reference to his low back pain, neck pain, and headaches." Additionally, Dr. McCaffrey noted Baker had a Class 5 Physical Impairment (severe limitation) and a Class 1 Mental/Nervous Impairment (no limitation).

Baker was also treated by pain management physician Dr. Jason Rosenberg from September 10, 2008 through August 4, 2009. Baker's chief complaint was low back and right leg pain, however, Dr. Rosenberg also noted Baker reported headaches and ringing in his ears. Baker received pain medication for his back and leg pain, but Dr. Rosenberg's notes do not indicate any diagnosis or treatment for Baker's reported headaches. Baker was also evaluated for chronic lower back pain by Dr. Jeffrey Wilkins in September and October 2009. Baker complained of headaches, numbness, and tingling to Dr. Wilkins, however Dr. Wilkins' notes do not reflect any diagnosis or treatment for Baker's symptoms.

From November 4, 2009 to November 4, 2010, Baker was treated by pain management physician Dr. Gregory Kang. Dr. Kang diagnosed Baker with lumbar degenerative disc disease with lumbar facet syndrome. Dr. Kang's notes do not contain any mention of symptoms of physical brain damage and/or any treatment for any such symptoms. Dr. Kang's medical records state Baker showed "no signs of cognitive impairment." On June 8, 2010, Dr. Kang determined Baker had reached

MMI and assigned him an 18% impairment rating to the lumbar spine.

On July 7, 2010, Baker filed a Form 50 alleging he was totally and permanently disabled as a result of injuries to his head, spine, left leg, and right leg. Baker also alleged he sustained physical brain damage as a result of the accident. Hilton and its insurance carrier, ACE American Insurance Co., (collectively, Respondents) filed a Form 51 admitting Baker suffered an injury to his back only. Respondents denied Baker was totally and permanently disabled and denied his allegation of physical brain damage.

In July 2010, Baker was referred to Dr. Robert Brabham for a psychological and vocational evaluation. Dr. Brabham noted Baker's history of academic difficulties, including his having dropped out of school after ninth grade. Dr. Brabham noted Baker stated he had been unable to handle the paperwork or financial aspects of his auto mechanics business in the past. After reviewing Baker's file, Dr. Brabham opined there were "multiple medical references ... confirming that Mr. Baker sustained a (physical) traumatic brain injury." Dr. Brabham found Baker continued to "present classic evidence as to the continuing presence of cognitive deficits that resulted from his brain injury." Dr. Brabham diagnosed Baker with a cognitive disorder, secondary to traumatic brain injury, and opined Baker was unable to perform any "substantial gainful work activity."

Baker was subsequently evaluated by psychologist Dr. L. Randolph Waid in September 2010. Dr. Waid also noted Baker's history of academic difficulties. Dr. Waid opined that Baker was not capable of returning to work and that he was experiencing "neurocognitive impairments affecting his capacity for attention, concentration, memory, and other brain behavior functions." According to Dr. Waid, the "causal factors" for Baker's neurocognitive impairments involved the "interfering effects of chronic pain/somatic symptoms; psychological disruption; fatigue; use of a regimen of medications; and residuals of a mild traumatic brain injury." Dr. Waid opined the "primary obstacle" to Baker's ability "to return successfully to role functioning are the residuals from the orthopedic injury." Dr. Waid agreed with Dr. Brabham that Baker "is

experiencing neurocognitive impairments due to a head injury (physical brain injury) that are contributing to his overall compromise in functioning." [1]

Finally, Baker was evaluated by psychologist Dr. Robert Deysach in December 2010. Dr. Deysach found Baker had an IQ of 62 which placed him in the "mildly handicapped" range. Additionally, Dr. Deysach agreed with Dr. Waid that the "primary obstacles" to Baker's ability to return to the competitive job market are "the residuals from the orthopedic injury." Dr. Deysach noted Baker's cognitive deficits were "developmental (i.e., existing before the accident) rather than the result of physical brain damage from the accident." Dr. Deysach opined it was "reasonable to conclude that Mr. Baker did suffer an injury to the head with brief and mild post-concussive symptoms. However, the data do not appear to support the presence of an acquired brain injury nor restriction in productivity or quality of life as a result of the physical brain damage."

Baker and his wife (Mrs. Baker) both testified at a January 4, 2011 hearing before the Single Commissioner. Mrs. Baker testified Baker wasn't "the same man" he was before the accident, and he struggled with memory loss, confusion, and forgetfulness. She further testified Baker's personality changed after the accident and he became moody and withdrawn. Baker testified he suffered headaches, memory loss, and confusion following the accident, but admitted there was no discussion or treatment for any memory loss or cognitive difficulties during his first two years of treatment.

The Single Commissioner found Baker sustained a work related injury to his back which resulted in a greater than 50% loss of use of his back. Additionally, the Single Commissioner determined Baker was permanently and totally disabled as a result of his back injury and was entitled to compensation in the amount of $623.26 per week from May 5, 2008, and continuing for a period not to exceed five hundred weeks. The Single Commissioner found Baker did not suffer a physi-

---

1. Following Dr. Waid's evaluation and approximately one-and-a-half years after he last treated Baker, Dr. McCaffrey checked "yes" in a medical questionnaire from Baker's attorney that he agreed with Dr. Waid that Baker sustained a permanent physical brain injury.

cal brain injury or any resulting physical brain damage as a result of the accident and denied Baker's request for lifetime benefits.

Baker appealed the Single Commissioner's finding that he did not suffer physical brain damage to the Appellate Panel. The Appellate Panel affirmed the Single Commissioner, noting that while Dr. Deysach opined Baker sustained a head injury, the "data [did] not support a finding of physical brain damage." The Appellate Panel found that based on the greater weight of the evidence as a whole, Baker did not suffer a physical brain injury or any resulting brain damage. This appeal followed.

**STANDARD OF REVIEW**

The Administrative Procedures Act establishes the standard of review for decisions by the Appellate Panel. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). The Appellate Panel is the ultimate fact finder in workers' compensation cases and is not bound by the single commissioner's findings of fact. *Etheredge v. Monsanto Co.*, 349 S.C. 451, 454, 562 S.E.2d 679, 681 (Ct.App.2002). The findings of the Appellate Panel are presumed correct and will be set aside only if unsupported by substantial evidence. *Lark*, 276 S.C. at 135, 276 S.E.2d at 306. "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Taylor v. S.C. Dep't of Motor Vehicles*, 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct.App.2006) (quoting *S.C. Dep't of Motor Vehicles v. Nelson*, 364 S.C. 514, 519, 613 S.E.2d 544, 547 (2005)). "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." *Olson v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 57, 63, 663 S.E.2d 497, 501 (Ct.App.2008).

**LAW/ANALYSIS**

**I. Physical Brain Damage**

■ Baker argues the Appellate Panel erred in finding he did not suffer physical brain damage. We remand.

In general, a person injured within the Workers' Compensation Act (the Act) may not receive compensation for a period exceeding five hundred weeks. *See* S.C.Code Ann. § 42–9–10(A) (Supp.2012); S.C.Code Ann. Regs. 67–1101 (2012). However,

> [n]otwithstanding the five-hundred-week limitation prescribed in this section or elsewhere in this title, any person determined to be totally and permanently disabled who as a result of a compensable injury is a paraplegic, a quadriplegic, *or who has suffered physical brain damage* is not subject to the five-hundred-week limitation and shall receive the benefits for life.

S.C.Code Ann. § 42–9–10(C) (Supp.2012) (emphasis added). "Physical brain damage" is not statutorily defined. However, our supreme court recently clarified what is meant by "physical brain damage" under section 42–9–10(C) in *Crisp v. South-Co., Inc.*, 401 S.C. 627, 738 S.E.2d 835 (2013) *(Crisp II)*. In *Crisp II*, the court found Crisp's argument that the mere presence of any physical brain injury or damage, regardless of degree, triggered the operation of section 42–9–10(C) was not persuasive. 401 S.C. at 641, 738 S.E.2d at 842. The court viewed

> the inclusion of 'physical brain damage,' along with quadriplegia and paraplegia, in section 42–9–10(C) as indicative of the General Assembly's intent to compensate an employee-claimant for life only in the most serious cases of injury to the brain, separate and apart from other scheduled injuries, resulting in permanent physical brain damage.

*Crisp*, 401 S.C. at 641–42, 738 S.E.2d at 842. The *Crisp II* court found "the severity of the injury is the lynchpin of the analysis" and interpreted "the inclusion of 'physical brain damage' among the most serious injuries within the statutory exception to the 500 week cap on benefits as an indication that the legislature was contemplating a brain injury so severe that the person could not subsequently return to suitable gainful employment." *Id.* at 643, 738 S.E.2d at 843. The court stated its interpretation of the legislature's intent was "in harmony with the entire purpose of our workers' compensation regime and recognizes the other avenues of compensation available under the scheme for brain injuries that do not render the worker unemployable." *Id.* at 644, 738 S.E.2d at 843. Addi-

tionally, in *Sparks v. Palmetto Hardwood, Inc.*, 406 S.C. 124, 130, 750 S.E.2d 61, 64 (2013), our supreme court declined to impose a requirement that physical brain damage be proven through an "objective diagnostic medium," and concluded that physical brain damage, as described in section 42–9–10(C), is damage that is permanent and severe.

Here, the Appellate Panel stated it agreed with Dr. Deysach's conclusion that although Baker "may have sustained an injury to the head with brief and mild-post concussive symptoms, the data does not support a finding of physical brain damage." However, the Appellate Panel's finding is inconsistent with Dr. Deysach's report wherein he opined it was

> reasonable to conclude that Mr. Baker did suffer an injury to the head with brief and mild post-concussive symptoms. However, the data do not appear to support the presence of an acquired brain injury nor restriction in productivity or quality of life as a result of *the physical brain damage.*

(emphasis added). It is unclear from the Appellate Panel's order whether it misread Dr. Deysach's statement or interpreted the report in its entirety as a finding of no physical brain damage. Based on the inconsistency between Dr. Deysach's report and the Appellate Panel's physical brain damage finding, we remand to the Appellate Panel for clarification as to how it treated Dr. Deysach's report. In light of *Crisp II* and *Sparks*, the Appellate Panel should cite specific evidence to support its determination as to whether Baker sustained physical brain *damage.*

## II. *Crisp I*

 Baker argues the Appellate Panel erred in relying on *Crisp I*. We disagree.

The Appellate Panel cited *Crisp I* for the proposition that there must be sufficient evidence in the record to support a finding of physical brain damage. In *Crisp I*, the Single Commissioner found Crisp sustained a head injury resulting in cognitive disorders to his brain but not a physical brain injury. 390 S.C. at 343, 701 S.E.2d at 764. This holding was affirmed by the Appellate Panel but reversed by the circuit court. *Id.* The court of appeals reversed the circuit court, holding

the record is replete with substantial evidence to support the Commission's finding that Crisp did not sustain a physical brain injury. . . . The medical records of the several physicians who treated Crisp following the accident support reversal of the circuit court's decision. The hospital's physicians did not note any symptoms commonly attendant to a physical brain injury during Crisp's treatment. The physicians who evaluated Crisp following surgery did not diagnose Crisp with a physical brain injury. In fact, [the] MRI scan did not reveal any abnormalities suggestive of a physical brain injury and [Dr. Kopera] specifically opined Crisp was neurologically intact.

*Id.* at 345, 701 S.E.2d at 765.[2]

In this case, the Appellate Panel, citing *Crisp*, found there was insufficient evidence in the record to support a finding of physical brain damage pursuant to section 42–9–10(C) because the "medical records of several physicians who treated [Baker] following the accident made no reference to a brain injury or physical brain damage." Baker contends the Appellate Panel erred in relying on *Crisp* because there was far more evidence of "traumatic brain injury" in this case than in *Crisp*. In particular, Baker argues he complained throughout his treatment of headaches, while Crisp did not.

We find the Appellate Panel did not err in citing *Crisp I*. Although *Crisp I* was reversed by the supreme court in *Crisp II*,[3] the Appellate Panel's reliance on *Crisp I* was not an error justifying reversal because the proposition for which *Crisp I* was cited was not overturned by the supreme court and remains the law of this state. Accordingly, we affirm the Appellate Panel.

---

2. In *Crisp v. SouthCo., Inc.*, 401 S.C. 627, 640, 738 S.E.2d 835, 841 (2013) *(Crisp II)*, our supreme court noted the circuit court, court of appeals, and the parties alternatively referred to Crisp's brain injuries in terms of "physical brain injury" and "physical brain damage," despite the "marked difference in the length of time compensation may be awarded when the injury is 'physical brain damage.' "

3. In *Crisp II*, our supreme court reversed the court of appeals and remanded to the Appellate Panel for a determination of MMI, permanency, and whether Crisp's injury constituted "physical brain damage" as contemplated by section 42–9–10(C). *Crisp II*, 401 S.C. at 640, 738 S.E.2d at 842.

## CONCLUSION

We affirm the Appellate Panel's reliance on *Crisp I*. We remand to the Appellate Panel for clarification of its physical brain damage finding.

**AFFIRMED IN PART AND REMANDED.**

HUFF and GEATHERS, JJ., concur.