# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Thomas Contreras, Employee, Appellant,

v.

St. John's Fire District Commission, Employer, and State Accident Fund, Carrier, Respondents.

Appellate Case No. 2021-000683

―――――――――

Appeal From The Workers' Compensation Commission

―――――――――

Opinion No. 6052
Heard September 14, 2023 – Filed March 13, 2024

―――――――――

**AFFIRMED**

―――――――――

Stephen Benjamin Samuels, of Samuels Reynolds Law Firm LLC, of Columbia, and Gary Christmas, of Christmas Injury Lawyers, LLC, of Mount Pleasant, for Appellant.

Margaret Mary Urbanic, of Clawson & Staubes, LLC, of Charleston, and Erin Farrell Farthing, of Lexington, for Respondents.

―――――――――

**KONDUROS, J.:** Thomas Contreras appeals an order from the Appellate Panel of the South Carolina Workers' Compensation Commission (the Appellate Panel) that awarded him permanent partial disability (PPD) compensation for a single member as a result of an injury to his right shoulder. On appeal, Contreras contends the Appellate Panel erred in making a single member disability award when the evidence showed his disability should have been awarded under the loss of

earnings capacity statute.[1]  He argues the Appellate Panel erred in limiting compensation to injury for the shoulder, despite overwhelming evidence of injury to multiple scheduled body parts.  Additionally, he asserts that on remand, the Appellate Panel erroneously substituted its judgment for the previous Appellate Panel.  We affirm.

## FACTS/PROCEDURAL HISTORY

St. John's Fire District Commission (St. John's) employed Contreras as a firefighter for over twenty-two years.  On October 8, 2008, Contreras sustained an injury in the course and scope of his employment.  The incident report indicated "Contreras felt something pull in his right shoulder" while lifting weights.  He went to the emergency room, where his chief complaint was a soft tissue injury to the posterior right shoulder.

Following Contreras's injury, he made numerous doctors' visits, ultimately resulting in four separate surgeries.  A December 12, 2008 MRI showed supraspinatus tendinitis, a probable superior labral tear, and moderate acromioclavicular (AC) joint arthrosis.  Dr. David Jaskwhich diagnosed Contreras with right shoulder pain and a superior labral tear with bursitis.  On January 29, 2009, Dr. Jaskwhich performed a "[r]ight shoulder arthroscopy with extensive debridement of bursa, synovium, labrum[,] and bone" and an "[a]rthroscopic repair of the superior labrum anterior-posterior (SLAP) tear."  In August 2009, Contreras returned to Dr. Jaskwhich with continued pain.  An MRI of his right shoulder revealed "mild tendinopathy of the supraspinatus and infraspinatus tendons" as well as "the intra-articular portion of the biceps tendons."  After reviewing the MRI results, Dr. Jaskwhich noted Contreras had a "possible persistent labrum tear."  Before performing a second surgery, Dr. Jaskwhich diagnosed Contreras with "[r]ight shoulder pain and impingement status post labral repair."  Around October 1, 2009, Dr. Jaskwhich performed a second surgery: a "[r]ight shoulder arthroscopy with extensive debridement of suture, labrum, bursa[,] and bone."  At a May 5, 2010 follow-up visit, Dr. Jaskwhich indicated Contreras continued to have pain in his right shoulder and "tenderness over the anterior biceps tendon" and treated him with injections along the biceps tendon.  On July 14, 2010, Dr. Jaskwhich released Contreras at maximum medical improvement (MMI), assigning a 10% impairment rating to the right shoulder.

---

[1] S.C. Code Ann. § 42-9-20 (2015).

On September 24, 2010, Contreras reported to Dr. James R. DeMarco, who indicated Contreras's chief complaints included "[r]ight shoulder loss of internal rotation," "[l]ong head of the biceps tendinopathy," and "[s]ignificant impingement syndrome." Dr. DeMarco performed Contreras's third surgery on October 11, 2010, completing a "[r]ight shoulder major debridement of a superior labrum anterior to posterior tear," a "[r]ight shoulder subacromial decompression and bursectomy," and a "[r]ight shoulder [AC] joint resection." Dr. DeMarco also performed "a distal clavicle resection" at that time.

On January 21, 2011, Dr. DeMarco stated in a medical report Contreras had a 7% permanent partial impairment of the right upper extremity, which converted to an 11% impairment of the right shoulder. In an addendum dated that same day, Dr. DeMarco opined Contreras had an 11% permanent impairment to the shoulder and a 7% impairment to the right upper extremity, which converted to a 4% impairment to the whole person. On May 16, 2011, Dr. DeMarco completed a Form 14B "Physician's Statement," indicating Contreras had an 11% impairment to the right shoulder, was unable to return to work, and would not need future medical care.

Dr. Charles H. Hughes Jr. conducted an independent medical evaluation (IME) of Contreras on October 6, 2011. Dr. Hughes completed a "check-box" form[2] that same day, checking "YES" to whether "Contreras'[s] injuries to his right shoulder, right upper extremity, right biceps[,] and clavicle [were] caused by and/or aggravated by the injuries he sustained in his" work accident. Dr. Hughes assigned a 14% permanent impairment rating to the right shoulder and 10% permanent impairment rating to the clavicle, writing in AC joint next to the word clavicle and upper extremity next to the rating.[3]

---

[2] A few similar terms—such as "check-box" or "check-the-box" forms, reports, or questionnaires—are used throughout the record. These terms all refer to forms sent by Contreras's attorneys to doctors asking questions about his condition. The forms provided a place to check for yes or no and also several lines of space with the preface, "Explain, if necessary." One form also had a list of physical restrictions that could be checked. That form also included a question concerning Contreras's impairment rating that listed several body parts with corresponding blanks to be filled in with a percent sign next to each blank.

[3] The same question contained blanks to fill in for right upper extremity and right biceps but Dr. Hughes did not fill in those blanks.

Contreras also underwent a vocational assessment with Jean R. Hutchinson, a vocational consultant, in October 2011.  Hutchinson reported that Contreras complained of right shoulder pain "with 'sharp' pain radiating up to the top of his shoulder."  She opined Contreras was unable to perform the duties of his former position as a fire department chief, "would be in jeopardy with regard to locating suitable employment[,] and would incur a loss of future earning capacity."  Hutchinson stated she anticipated Contreras earning minimum wage in the future.

In October 2011, Contreras filed a Form 50 asserting, "injuries to his right shoulder, right upper extremity, right glenohumeral ligament, right clavicle, right scapula, right lateral deltoid, right bicep[,] and right distal clavicle."  St. John's and its workers' compensation insurance carrier, the State Accident Fund, (collectively, Respondents) filed a Form 51, admitting Contreras sustained an injury to his right shoulder only.

On November 22, 2011, Dr. DeMarco reported Contreras continued to feel pain along the "long head of the biceps and bicipital groove."  Dr. DeMarco stated "the [one] thing about him is that he has been completely consistent with where his pain is, directly over the bicipital groove."  Dr. DeMarco explained the previous surgeries helped Contreras with some pain but he was "left with biceps pain which now needs to be addressed."  Dr. DeMarco recommended another surgery, stating that after completing "a tenodesis, a coracoid decompression," "[t]his [wa]s absolutely the last thing that can be done in the shoulder."

In March 2012, the parties entered into a consent order indicating Contreras sustained "an admitted injury to his right shoulder" and could return to Dr. DeMarco for additional treatment.

On March 29, 2012, Dr. DeMarco reported that Contreras's diagnoses prior to his fourth surgery included "[r]ight shoulder coracoid impingement," "[r]ight shoulder intra-articular synovitis and adhesions," "[r]ight shoulder subacromial impingement with adhesions," and "[r]ight shoulder long head of biceps tendinopathy."  Dr. DeMarco performed Contreras's fourth and final surgery that day: a "[r]ight shoulder major debridement of the intra-articular synovitis with coracoid decompression," a "[r]ight shoulder subacromial decompression and bursectomy," and a "[r]ight shoulder long head of the biceps tenodesis."  On June 26, 2012, Dr. DeMarco reported Contreras's pain at that time was minimal but he had been experiencing spasms around his biceps.

On August 7, 2012, Dr. DeMarco released Contreras at MMI, indicated he had restrictions of less than forty pounds for overhead lifting with both hands and no more than twenty pounds with his right arm, reported he could perform "a light to medium level job," and assigned a permanent partial impairment rating of 9%, specifying "3% for biceps atrophy, 3% for loss of internal rotation, 2% for loss of forward flexion[,] and 1% for pain and muscle spasm."

On September 4, 2012, Dr. DeMarco completed a Form 14B, opining Contreras had a 15% impairment to the right shoulder. He noted the impairment rating was a conversion from the right upper extremity to the right shoulder. On October 8 and 24, 2012, Dr. DeMarco completed "check-box" questionnaire forms. On both forms, Dr. DeMarco checked "YES" next to the statement: "Contreras'[s] injuries to his right shoulder and right upper extremity, (right biceps) are caused by and/or aggravated by the injuries he sustained in his" work accident. He also marked "YES" on both forms next to the statement that Contreras's right shoulder injuries affected "his right upper extremity by way of radiating pain and tenderness into his right biceps as a result of" the work accident.

In February 2013, Contreras filed a second Form 50, alleging the same injuries as his previous Form 50, which included his right shoulder, right upper extremity, right clavicle, right bicep, and right distal clavicle. By Form 51, Respondents again admitted injury to only the right shoulder. Respondents denied injury to "all other body parts."

In August 2013, following a hearing, the single commissioner found (1) Contreras injured his right shoulder and right upper extremity, (2) Contreras could not return to his job as a firefighter, and (3) Contreras suffered a permanent partial wage loss under section 42-9-20. Respondents appealed to the Appellate Panel, which affirmed in part, reversed in part, and remanded to the single commissioner. The Appellate Panel found Contreras's injury was "limited to the right shoulder" and remanded "for a determination of an award to [Contreras's] right shoulder under" section 42-9-30 of the South Carolina Code (2015). Contreras appealed the remand to this court, which dismissed the appeal as interlocutory and not immediately appealable, citing *Bone v. United States Food Service*, 404 S.C. 67, 73, 744 S.E.2d 552, 556 (2013).

On remand, the single commissioner determined Contreras sustained a 35% PPD to his right shoulder. Contreras appealed to the Appellate Panel, which affirmed the single commissioner's decision. Contreras appealed to this court, which found the Appellate Panel failed to make sufficiently detailed findings of fact and

conclusions of law in order for this court to determine whether the decision was erroneous.[4] *Contreras v. St. John's Fire Dist. Comm'n*, Op. No. 2019-UP-040 (S.C. Ct. App. filed Jan. 23, 2019).  This court "vacate[d] the Appellate Panel's order and remand[ed] the case to the Commission to make specific findings of fact regarding Contreras's right arm, right shoulder, and right clavicle."[5]  *Id.* at 3.

In the order after remand from this court, the Appellate Panel made additional findings of fact, awarded Contreras 35% PPD to the right shoulder, and found the "award encompasse[d] and include[d] any incidental effect on [his] right clavicle, right bicep, and/or right bicep tendon."[6]  It stated Contreras was not entitled to a separate award for "the right arm or right clavicle."  This appeal followed.

## LAW/ANALYSIS

### I.  Alleged Inconsistency in Appellate Panel Orders

In this current appeal, Contreras argues that upon remand from this court, "the Appellate Panel issued an *entirely* new [o]rder," "making new findings of fact *wholly contradictory* to its previous findings."  He asserts that in the new order, the Appellate Panel erroneously substituted its judgment for that of the 2014 Appellate Panel.[7]  He contends the Appellate Panel erred "by completely reversing its own

---

[4] This court found, "Although the Appellate Panel's order stated there was 'no separate impairment rating to the upper extremity,' its order failed to clearly set forth the underlying facts upon which it relied to support its conclusion that Contreras's injury was limited to the right shoulder."  *Contreras*, Op. No. 2019-UP-040 at 2.  This court determined, "Contreras presented evidence that he injured his right arm and right clavicle in addition to his right shoulder.  This issue impacts the ultimate liability in the case and determines whether compensation falls under section 42-9-20 . . . or section 42-9-30 . . . ."  *Id.*

[5] This court, in light of the insufficiency of the Appellate Panel's order, declined to "address whether Contreras should have received an award under section 42-9-20 rather than section 42-9-30."  *Contreras*, Op. No. 2019-UP-040 at 3 n.1.

[6] It also found the issue of an injury to the right clavicle was unpreserved for review because Contreras had not appealed from the single commissioner's first order, which did not make an award for the clavicle.  However, the Appellate Panel made substantive findings of fact as to the compensability of the right clavicle out of an abundance of caution.

[7] Throughout the proceedings of this case, the Appellate Panel has been composed of the same three commissioners.  The first and third Appellate Panel had the same

previous findings." He maintains the Appellate Panel "did not have [the] authority to dispense with the original findings" and "could not reverse itself by" changing its view of the check-box forms. He posits this court instructed the Appellate Panel "to add to its previous findings to explain its reasoning," not to "ignore what it ha[d] already established." We disagree.

The Appellate Panel's first order indicated it "g[a]ve more weight to the opinions" provided in Dr. DeMarco's October 2012 check-box forms instead of his 2011 Form 14B, regarding future medical treatment Contreras needed, because the check-box forms were closer in time to the hearing and thus, "more accurately reflect[ed] [Contreras's] current condition." Specifically, the Appellate Panel stated:

> [A]uthorized orthopedic surgeon, Dr. James DeMarco, opined on "check the box" forms dated October 8, 2012, and October 24, 2012, that [Contreras] is in need of future medical care and treatment in the form of medications, pain management clinic, injections, tens unit, repeat diagnostic imaging, physical therapy[,] and follow up office visits as a result of his August 8, 2008[] accident at work. He further opined that said medical treatment would tend to lessen [Contreras's] period of disability. Dr. DeMarco, does not opine on his 14[]B issued on May 16, 2011, that [Contreras] will need future medical care and treatment; however, he opines differently on his October 8, 2012[] and October 24, 2012[] *check the box reports[,] and we give more weight to the opinions given in said reports given that they were provided at a later date than the 14[]B, were provided closer to [Contreras's] hearing date[,] and more accurately reflect [Contreras's] current condition and need for future medical care and treatment.*

(emphasis added).

The Appellate Panel's third and final order, issued upon remand from this court, noted the check-box forms Contreras sent to Dr. DeMarco "were not part of or in

---

commissioner designated as chair; a different commissioner was the chair for the second Appellate Panel.

response to" a clinical treatment visit.  The Appellate Panel noted that although the check-box forms stated Contreras had an injury or aggravation to the right biceps, the forms qualified the statement by indicating "the [e]ffect is radiating pain and tenderness 'into' the right biceps."   The Appellate Panel found "this check-off response inconsistent with [Contreras's] subjective complaint to his vocational expert, whose 2011 report states that [Contreras] reported that his pain radiates upwards."  The Appellate Panel found the check-box forms were also inconsistent with Dr. DeMarco's Forms 14B, to which it gave great weight.

The Appellate Panel further provided:

> As to both the right arm and right clavicle, we give the greatest weight to the <u>treatment</u> records accompanied by a clinical visit, rather than to check-the-box questionnaires sent by [Contreras] and for which there was no accompanying clinical visit and/or narrative treatment note.  For instance, in the last narrative treatment note from Dr. DeMarco of August 7, 2012 (the date of [MMI]), Dr. DeMarco's "Assessment" was "Shoulder pain" (under this particular heading), and the "Treatment" heading lists only "Shoulder Pain" as well. As part of the impairment rating to the right shoulder, Dr. DeMarco assigned 3% for biceps atrophy and **1% for pain/spasm** [emphasis added].  This appears to the Appellate Panel to be the extent of any incidental involvement regarding the arm with nothing specifically regarding the clavicle . . . .

The Appellate Panel further stated it considered Dr. Hughes's IME but noted it was created prior to Contreras's final surgery and evaluated the right shoulder. However, the Appellate Panel affirmed the single commissioner's prior order with regard to future medical care.

"The findings of fact of an administrative body must be sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence." *Parsons v. Georgetown Steel*, 318 S.C. 63, 66, 456 S.E.2d 366, 368 (1995).  An appellate court must affirm the Commission's findings of fact if substantial evidence supports them. *Bartley v. Allendale Cnty. Sch. Dist.*, 392 S.C. 300, 306, 709 S.E.2d 619, 622 (2011).  "A court may reverse or modify the Commission's decision if substantial rights of the appellant have been prejudiced

because the administrative findings, inferences, conclusions[,] or decisions are affected by other error of law." *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 282-83, 519 S.E.2d 583, 591 (Ct. App. 1999).

"The final determination of witness credibility and the weight assigned to the evidence is reserved to the [A]ppellate [P]anel." *Houston v. Deloach & Deloach*, 378 S.C. 543, 551, 663 S.E.2d 85, 89 (Ct. App. 2008); *see also Shealy v. Aiken County*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000) (noting the Appellate Panel is tasked with finding facts, evaluating the credibility of the witnesses, and assigning weight to the evidence). "In an appeal from the Commission, this [c]ourt may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact . . . ." *Corbin v. Kohler Co.*, 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct. App. 2002); *see also Etheredge v. Monsanto Co.*, 349 S.C. 451, 456, 562 S.E.2d 679, 681 (Ct. App. 2002) ("A court 'may not substitute its judgment for that of any agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.'" (quoting *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 339, 513 S.E.2d 843, 845 (1999))).

"The weight to be ascribed to particular testimony is for the commission to determine and not . . . [an appellate c]ourt." *Tobey v. L & P Constr. Co.*, 296 S.C. 122, 125, 370 S.E.2d 897, 899 (Ct. App. 1988). "The credibility and weight of the doctor's testimony is for the trier of fact." *Parsons*, 318 S.C. at 67, 456 S.E.2d at 368. "Regardless of conflict in the evidence, either of different witnesses or of the same witness, a finding of fact by the Commission is conclusive." *Stokes v. First Nat'l Bank*, 306 S.C. 46, 50, 410 S.E.2d 248, 251 (1991). However, "[t]he commission may not . . . give artificial importance to a credibility determination when credibility is not a reasonable and meaningful basis on which to decide a question of fact." *Crane v. Raber's Disc. Tire Rack*, 429 S.C. 636, 639, 842 S.E.2d 349, 350 (2020).

In *Fragosa v. Kade Construction, LLC*, this court found "the Appellate Panel made inconsistent findings with regard to the existence of a physical brain injury." 407 S.C. 424, 430, 755 S.E.2d 462, 466 (Ct. App. 2013). This court "remand[ed] to the Appellate Panel for clarification" because of the inconsistency. *Id.* at 431, 755 S.E.2d at 466. This court also remanded for clarification in *Baker v. Hilton Hotels Corp.*, when the Appellate Panel had stated it agreed with a doctor's conclusion, but this court found the Appellate Panel's finding was inconsistent with the doctor's actual report. 406 S.C. 395, 402, 752 S.E.2d 279, 282-83 (Ct. App. 2013).

In this case, this court previously instructed the Appellate Panel "to make specific findings of fact regarding Contreras's right arm, right shoulder, and right clavicle." *Contreras*, Op. No. 2019-UP-040 at 3. The Appellate Panel did this.

The first order from the Appellate Panel did not find Dr. DeMarco's Forms 14B unreliable, but simply gave the check-box forms more weight because they were more recent.[8] The order did this in determining whether or not Contreras needed future medical care; the Appellate Panel found that he would. *See* S.C. Code Ann. § 42-15-60(A) (2015) (stating the commission can award future medical treatment when it believes the treatment "will tend to lessen the period of disability as evidenced by expert medical evidence stated to a reasonable degree of medical certainty"); *Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 583, 514 S.E.2d 593, 598 (Ct. App. 1999) ("[A]n employer may be liable for a claimant's future medical treatment if it tends to lessen the claimant's period of disability despite the fact the claimant has returned to work and has reached [MMI]."). That finding was the basis for determining Contreras would need future medical care and that determination is no longer disputed. Because the parties were no longer litigating that issue, the Appellate Panel had no reason to restate this finding in its third order.

In its first order, the Appellate Panel found the check-box forms deserved more weight because the time at which they were completed was closer in time to the hearing and thus, those forms more accurately reflected Contreras's condition at the time of the hearing. The third Appellate Panel order gave Dr. DeMarco's Forms 14B more weight in deciding if any of Contreras's body parts other than his shoulder were injured because they were completed as a part of Contreras's medical treatment accompanying doctor's visits, whereas the check-box forms were completed as a result of Contreras's attorneys sending the forms to the doctors to be completed for use in this litigation. We find the Appellate Panel's findings were not inconsistent because the Appellate Panel relied on different forms to make different decisions. The Appellate Panel explained why it relied on which forms for each decision. Accordingly, the Appellate Panel's third order was not inconsistent with its first order.

---

[8] We note the Appellate Panel's first order initially references Dr. Marco's Forms 14B from both 2011 and 2012 in finding (5), but the finding Contreras alleges is inconsistent with the findings in the new order, finding (29), only mentions the Form 14B from 2011. The 2012 Form 14B was completed in September 2012, only one month before the check box forms. Both Forms 14B stated Contreras did not need future medical care.

## II. Substantial Evidence

Contreras argues the Appellate Panel erred by "making a single member disability award" under section 42-9-30 "when the evidence showed his disability should have been awarded under the loss of earnings capacity statute," section 42-9-20. He contends the Appellate Panel erred when it denied compensation for the arm and clavicle, either as an award for lost earnings under section 42-9-20 or separate awards for loss of use under section 42-9-30. He asserts the Appellate Panel must apply the statute that provides the greatest benefits for a claimant. He argues he sustained injuries to his right shoulder and his right arm—specifically, the biceps. He contends his arm injury "require[d] a separate surgery, resulted in definable impairment ratings, and left him with permanent pain, weakness, muscle atrophy[,] and restrictions." Contreras asserts Dr. DeMarco gave him a 3% permanent impairment rating for "biceps atrophy." Contreras contends his own testimony was consistent with the medical evidence because he stated he had pain in the front and back of his biceps.[9] We disagree.

"The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers' Compensation Commission." *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 288, 599 S.E.2d 604, 610 (Ct. App. 2004). "This [c]ourt's review is limited to deciding whether the [Appellate Panel's] decision is unsupported by substantial evidence or is controlled by some error of law." *Id.* at 289, 599 S.E.2d at 610-11. "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Id.* at 289, 599 S.E.2d at 611. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the [Appellate Panel's] finding from being supported by substantial evidence." *Hill v. Eagle Motor Lines*, 373 S.C. 422, 436, 645 S.E.2d 424, 431 (2007).

---

[9] In his reply brief, Contreras requests for the first time that this court "correct a scrivener's error" that occurred when the Appellate Panel decreased his average weekly wage from $1,174.20 to $1,134.72. At oral arguments, Respondents disputed that this was an error. Because Contreras did not raise this until his reply brief, we cannot address this issue. *See Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989) ("An appellant may not use . . . the reply brief as a vehicle to argue issues not argued in the appellant's brief.").

"The burden is on the claimant to prove such facts as will render the injury compensable, and such an award must not be based on surmise, conjecture[,] or speculation." *Crosby v. Wal-Mart Store, Inc.*, 330 S.C. 489, 496, 499 S.E.2d 253, 257 (Ct. App. 1998). "The extent of an injured workman's disability is a question of fact for determination by the Appellate Panel and will not be reversed if it is supported by competent evidence." *Fishburne v. ATI Sys. Int'l*, 384 S.C. 76, 86, 681 S.E.2d 595, 600 (Ct. App. 2009). "The final determination of witness credibility and the weight assigned to the evidence is reserved to the [A]ppellate [P]anel." *Houston*, 378 S.C. at 551, 663 S.E.2d at 89. "Where there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive." *Hargrove*, 360 S.C. at 290, 599 S.E.2d at 611. "Thus, while medical testimony is entitled to great respect, the fact finder may disregard it if other competent evidence is presented." *Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 23, 716 S.E.2d 123, 126 (Ct. App. 2011). When conflicting medical evidence has been presented, "the findings of fact of the commission are conclusive." *Nettles v. Spartanburg Sch. Dist. # 7*, 341 S.C. 580, 592, 535 S.E.2d 146, 152 (Ct. App. 2000).

In South Carolina workers' compensation proceedings, an injured employee has three ways to obtain compensation: (1) total disability under section 42-9-10 of the South Carolina Code (2015); (2) partial disability under section 42-9-20; and (3) scheduled disability under section 42-9-30. *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 105, 580 S.E.2d 100, 102 (2003). "The first two methods are premised on the economic model, in most instances, while the third method conclusively relies upon the medical model with its presumption of lost earning capacity." *Id.* "[A] claimant with one scheduled injury is limited to the recovery under [section] 42-9-30 alone." *Id.* at 106, 580 S.E.2d at 103. "[A]n individual is not limited to scheduled benefits under [section] 42-9-30 if he can show additional injuries beyond a lone scheduled injury." *Id.* "Generally, an injured employee may proceed under either the general disability sections 42-9-10 and 42-9-20 or under the scheduled member section 42-9-30 in order to maximize recovery . . . ." *Lee v. Harborside Café*, 350 S.C. 74, 78, 564 S.E.2d 354, 356 (Ct. App. 2002). "Only where a scheduled loss is not accompanied by additional complications affecting another part of the body is the scheduled recovery exclusive." *Id.*

> The policy behind allowing a claimant to proceed under the general disability [section] 42-9-10 and [section] 42-9-20 allows for a claimant whose injury, while falling under the scheduled member section, nevertheless affects other parts of the body and warrants providing the

> claimant with the opportunity to establish a disability
> greater than the presumptive disability provided for under
> the scheduled member section.

*Brown v. Owen Steel Co.*, 316 S.C. 278, 280, 450 S.E.2d 57, 58 (Ct. App. 1994).

When an injury is confined to a scheduled member and the injury has not impaired any other part of the body, the employee can receive compensation only for the scheduled member under section 42-9-30. *Colonna v. Marlboro Park Hosp.*, 404 S.C. 537, 545, 745 S.E.2d 128, 132-33 (Ct. App. 2013). In order to receive compensation in addition to that scheduled for the injured member, the claimant must show the injury affects some other part of his body. *Id.* at 545, 745 S.E.2d at 133. "[A] claimant must prove not only that another body part was *affected* by an injury to a scheduled member, but that another body part was *impaired or injured* for section 42-9-10 to apply." *Dent v. E. Richland Cnty. Pub. Serv. Dist.*, 423 S.C. 193, 202, 813 S.E.2d 886, 890-91 (Ct. App. 2018).

In *Dent*, this court found the claimant "presented sufficient evidence to support his claims that his back injury has caused additional injury or impairment to his leg" as he "complained of persistent pain, numbness, and weakness in his . . . leg to his doctors, and" two doctors diagnosed him with lumbar radiculopathy. *Id.* at 202, 813 S.E.2d at 891. However, in that case the Appellate Panel found the claimant's back injury affected his leg. *Id.* This court found the evidence of the claimant's leg pain in the record was substantial evidence of an injury affecting his leg and thus, claimant could proceed under section 42-9-10. *Id.* at 202-03, 813 S.E.2d at 891.

Contreras argues the primary issue on appeal here is "virtually the same" as the one this court decided in *Hutson v. S.C. State Ports Authority*, when it found a claimant may have been entitled to additional compensation under section 42-9-30 because he suffered radicular symptoms from his back into his leg. 390 S.C. 108, 700 S.E.2d 462 (Ct. App. 2010), *rev'd on other grounds*, 399 S.C. 381, 732 S.E.2d 500 (2012).

In *Hutson*, the claimant appealed the Appellate Panel's decision limiting his recovery to a 30% loss of use to his back. *Id.* at 110, 700 S.E.2d at 463. On appeal, the claimant pointed to the single commissioner's statements made both at the hearing as well as in the "order that he had intended to take into account his belief that [the claimant's] injury affected his right leg as well as his back and the combination of the two injuries would enable [the claimant] to recover under

section 42-9-20 as well as section 42-9-30." *Id.* at 116, 700 S.E.2d at 467. The single commissioner's order found the claimant "suffered radicular symptoms in his right leg that affected the functioning of the limb." *Id.* at 117, 700 S.E.2d at 467. The single commissioner "reiterated this finding when, in commenting on [the claimant's] assurances that he was capable of running a restaurant, he indicated that but for this testimony, he would have found claimant to be permanently and totally disabled 'with [e]ffects to the right leg.'" *Id.* Neither the employer nor the carrier appealed that finding. *Id.* Accordingly, this court held the claimant had "established at least a prima facie case for compensation for the injury to his leg pursuant to section 42-9-30 and remanded." *Id.* No party sought a writ of certiorari from the supreme court as to this court's determination regarding claimant's leg injuries. *Hutson v. S.C. State Ports Auth.*, 399 S.C. 381, 386 n.1, 732 S.E.2d 500, 502 n.1 (2012). The supreme court reversed this court's "decision that [the claimant] did not show a wage loss within the meaning of section 42-9-20" and remanded the matter. *Id.* at 390, 732 S.E.2d at 504.

Because the employer and carrier in *Hutson* did not appeal the single commissioner's finding regarding the claimant's leg, we disagree the case requires us to reverse the Appellate Panel.

Substantial evidence supports the Appellate Panel's determination that Contreras sustained an injury to his right shoulder only. The Appellate Panel concluded Contreras did not sustain an injury to his right clavicle, noting no medical diagnostics were completed on the clavicle, the treatment records referenced the clavicle only once, and Contreras did not complain of pain or injury to the clavicle in his deposition or at the hearing. The Appellate Panel also determined Contreras did not sustain an injury to his right arm. After the first two shoulder surgeries, Dr. Jaskwhich assigned a 10% impairment rating to the right shoulder in 2010. Contreras then reported to Dr. DeMarco, who indicated his chief complaints were "[r]ight shoulder loss of internal rotation," "[l]ong head of the biceps tendinopathy," and "[s]ignificant impingement syndrome." After Dr. DeMarco completed the third surgery, he completed a Form 14B, assigning Contreras an 11% impairment rating to the right shoulder in 2011. When Dr. DeMarco recommended a fourth surgery for Contreras, he provided "[t]his [wa]s absolutely the last thing that can be done in the shoulder." Finally, Dr. DeMarco completed another Form 14B, opining that Contreras had a 15% impairment to the right shoulder and that this was a conversion from the right upper extremity to the right shoulder. Furthermore, the Appellate Panel noted none of Contreras's doctors performed diagnostic testing on his right arm.

We acknowledge the record contains some evidence that supports Contreras's argument his right arm was affected, including his hearing testimony about pain in his biceps, complaints of long head of the biceps tendinopathy, Dr. DeMarco's assignment at one point of 3% impairment for biceps atrophy, and Dr. Hughes's IME opinion Contreras had a 14% impairment to the right shoulder and 10% to the right upper extremity. "However, when faced with conflicting testimony, we are constrained by our limited standard of review." *Colonna*, 404 S.C. at 547, 745 S.E.2d at 134. The record contains numerous references in Contreras's medical records to a shoulder injury with no mention of a bicep injury. Although Dr. DeMarco checked yes as to whether Contreras's right shoulder affected his right upper extremity on the check-box forms, the Appellate Panel had the authority to weigh all of the evidence in the record to determine the extent of Contreras's disability. Accordingly, the Appellate Panel did not err by limiting Contreras's disability award to his right shoulder under section 42-9-30. *See, e.g.*, *Brown*, 316 S.C. at 280, 450 S.E.2d at 58 (holding the Appellate Panel properly required an employee to proceed under the scheduled member section when the employee failed to prove his back injury affected another body part or contributed to an impairment beyond a single scheduled member).

**CONCLUSION**

Based on the foregoing, the Appellate Panel's final order limiting Contreras's disability award to his shoulder is

**AFFIRMED.**

**THOMAS and GEATHERS, JJ., concur.**